**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____

|  |  |  |
|---|---|---|
| COLONY INSURANCE CO., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 17-03577 (RBK/KMW) |
| | : | |
| TROENSA CONSTRUCTION, INC., *et al*, | : | **OPINION** |
| | : | |
| Defendants. | : | |

_____

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiff Colony Insurance Company's ("Colony")

Motion for Partial Summary Judgment [Doc. No. 24], which seeks declaratory judgment that

insurance policy GL3529983 ("Colony Policy") does not require Colony to defend or indemnify

the Defendant Troensa Construction, Inc. ("Troensa") in a lawsuit previously filed in New Jersey

Superior Court. Colony also seeks a declaratory judgment that the Colony Policy does not

require Colony to provide a defense or indemnify Defendant EJS Construction, Inc. ("EJS"). In

addition, Defendant the River's Edge Association ("Association") files a Cross Motion to vacate

an entry of default against Troensa. [Doc. No. 31]. For the reasons expressed in this Opinion,

the Court **GRANTS** Colony's motion and **DENIES** the Association's cross motion.

## I.     BACKGROUND

We begin with a brief note.  This matter appears to arise from a situation familiar to district courts.  Two related lawsuits are pending – one in state court and the case before this Court.  The state action seeks to determine a defendant's liability for an alleged harm, and the federal action seeks only a declaratory judgment on an insurance company's obligation to defend and indemnify the defendant.  This case departs from the familiar in three important ways.  First, the insurer is not a named defendant in the underlying state action.  Second, the insured has not responded in either proceeding.  Third, the insurer here has not moved for default judgment.  We now turn to the facts.

❖

This case involves a damaged condominium development and insurance coverage. Sometime in or before the year 2004, River's Edge Association ("Association"), a New Jersey non-profit corporation, planned to construct and develop a condominium development known as the River's Edge at Delanco in Delanco, New Jersey.  Def. St. of Mat'l Fact ("Def. SMF") [Doc. No. 29-1] ¶ 1.  The Association oversaw the administration, operation, and management of the River's Edge.  *See* Fourth Amended Complaint in *Rivers Edge at Delanco Condominium Association, Inc. v. Gres and Kaluzny Land Development, LLC, et al*, No. BUR-L-1570-14 ("Burlington Complaint") [Doc. No. 6-1].  The first phase of the project included the construction of up to seventy-one condominium units.  Burlington Complaint ¶ 84.

In constructing the River's Edge, the Association hired developers, builders, and subcontractors.  *See Id.*  On July 17, 2008, subcontractor EJS Construction Inc. ("EJS") hired subcontractor Troensa Construction Inc. ("Troensa").  Def. SMOF ¶ 4.  Troensa's insurance broker, AVS Insurance Agency, Inc. ("AVS"), provided EJS with a Certificate of Liability

Insurance. Certificate of Liability Insurance ("Certificate") [Doc. No. 6-4]. This certificate included several clauses. *Id.* First, it listed Troensa's insurance coverage and named Colony Insurance Co. under "Insurer's Affording Coverage." *Id.* Colony Policy GL3529983 was among the listed policies. *Id.* The certificate said "coverages have been issued to the insured named above [Troensa] for the policy period indicated, notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain . . ." *Id.* Next, the certificate named EJS as a "Certificate Holder" and stated, "Certificate Holder Is Named As Additional Insured As Respects Work Performed On Their Behalf." *Id.* Finally, the certificate said, "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." *Id.*

According to the Association, EJS hired Troensa to furnish certain services in connection with the building envelope of the River's Edge. Def. Sup. St. of Mat'l Fact ("Def. SSF") [Doc. No. 29-2] ¶ 6. Troensa was to provide certain exterior finishes, windows and framing, and related components and parts. *Id.*

### The Colony Policy

Prior to working at the River's Edge, Troensa applied for commercial insurance coverage from Colony Insurance ("Colony") through its insurance agent AVS. Commercial Insurance Application ("Application") [Doc. No. 6-3]. In the application, Troensa completed the section "Nature of the Business/Description of Operations by Premises." *Id.* There, Troensa wrote, "Carpentry – Windows, Siding, Decks, and Residential Carpentry." *Id.* Troensa also listed one-hundred percent of its work as "residential" and marked that it performed "NO" work on

"residential new construction." *Id.* at 9. Troensa similarly indicated that fifty percent of its work would be "remodeling" and fifty percent "repair/service work." *Id.*

Colony then issued Troensa an insurance policy for Commercial General Liability. Colony Policy [Doc. No. 6-2]. The Policy ran from April 23, 2008 to April 23, 2009. *Id.* It included $1,000,000 limits for general aggregate, products/completed operations, personal and advertising injury, and each occurrence. *Id.* It also included a $100,000 limit for damage to rented premises and a $5,000 limit for medical expenses. *Id.* The Policy did not list the Association or EJS as either a party or third-party beneficiary. *Id.*

Two areas within the Policy are important to the current dispute. First, the Policy contained a limitation of coverage to business description endorsement, which limited coverage to "property damage" when "caused by or result[ing] from the business description in the Schedule." *Id.* at 10. The description was defined as "commercial or residential remodeling." *Id.* Second, the Policy contained an endorsement that excluded coverage for property arising out of or resulting from the insured's work on residential *new* construction work. *Id.* at 20 (emphasis added).

Colony now argues that the purpose of these two endorsements was "to make clear that the Colony Policy [did] not provide coverage" to Troensa, or any would-be additional insureds, for claims arising out of work performed "on residential new construction, including condominiums and apartment complexes . . . the policy only provide[d] coverage for remodeling work." Pl. Mot. Sum. J. ("Colony Motion") [Doc. No. 24] at 3.

The relevant portions of the Colony Policy are attached below:

### *LIMITATION OF COVERAGE*
### *TO*

## BUSINESS DESCRIPTION

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*SCHEDULE*

*BUSINESS DESCRIPTION; COMMERICAL OR RESIDENTIAL REMODELING, NOT TO INCLUDE ROOFING*

*A.  SECTION I – COVERAGE, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement,  b. is amended and the following is added:*

> *(4)  The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.*

*B.  SECTION I – COVERAGES, CONVERAGE B PERSONAL AND ADVERTISING LIABILITY, 1. Insuring Agreement,  b. is amended and the following is added:*

> *The insurance applies to "personal and advertising injury" caused by an offense in the course of the business described in the Schedule.*

*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.*

Colony Policy at 10.

## EXCLUSION – DESIGNATED WORK –
## RESIDENTIAL NEW CONSTRUCTION

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*PRODUCTS COMPLETED OPERATIONS LIABILITY COVERAGE PART*

> *SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2.  Exclusions is amended and the following added:*

*Residential New Construction Work*

*This insurance does not apply to "bodily injury" or "property damage" included in "products completed operations hazard" and arising out of or resulting from "your work" performed on new single or multiple family housing, apartment, townhouse or condominium projects.*

*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.*

Colony Policy at 20.

### The Burlington Action

On July 7, 2014, the Association sued various builders, developers, and subcontractors in New Jersey Superior Court ("Burlington Action") regarding construction defects on behalf of 265 homeowners at the River's Edge.[1] *Rivers Edge at Delanco Condominium Ass'n, Inc. v. Gres and Kaluzny Land Dev., LLC,* No. BUR-L-1570-14. Just over two years later, the Association submitted its fourth amended complaint, which added defendants EJS and Troensa. *See* Burlington Complaint [Doc. No. 6-1]. This complaint, spanning almost forty pages, alleged fourteen counts of misconduct against more than 100 defendants. *Id.* These causes of action include, *inter alia*, breach of express and implied warranty, negligence, negligent supervision, violations of the Consumer Fraud Act, common law fraud and misrepresentation, violations of the Planned Real Estate Development Full Disclosure Act, negligent hiring, and breach of contract. *Id.* The Association claimed approximately $13,000,000 in damages, of which, it attributed $6,500,000 to Troensa. Def. SSF ¶ 17.

---

[1] The Association's bylaws conferred rights to sue on behalf of the River's Edge unit owners. Burlington Complaint ¶ 2.

Colony entered the Burlington Action following the Association's failure to serve Troensa. *Id.* ¶ 20. The court then ordered substitute service on Colony. Def. Ans. ("Answer") [Doc. No. 11] ¶¶ 27–8. Colony challenged this order, moved to quash service, but the court denied its motion. Def. SFF ¶¶ 21–24. On November 17, 2016, the Association served Troensa via Colony with a summons and the fourth amended complaint. Answer ¶ 26. Neither Colony nor the defendants in the Burlington Action have located Troensa. Colony First Amended Complaint ("FAC" or "Colony FAC") [Doc. No. 6] ¶ 30. Trial appears set in this matter for March 2019. Docket Sheet, L00157014, NJ Superior – Burlington.

### *The Federal Action*

On May 18, 2017, Colony filed the instant complaint in this Court. Pl. Compl. ("Complaint" or "Colony Complaint") [Doc. No. 1]. Now, Colony seeks a declaratory judgment regarding counts two and six of its amended complaint. Colony Motion. Count two seeks a declaratory judgment that insurance policy number GL3529983 (the "Policy"), issued by Colony to Troensa, does not require Colony to provide a defense or indemnification to Troensa in connection with claims made against Troensa in the Burlington Action. Colony FAC. Count six similarly seeks declaratory judgment that the Policy does not require Colony to defend or indemnify EJS. *Id.* Colony argues there is no dispute over the terms in the Policy, which cover remodeling and bar new construction. Colony Reply Brief [Doc. No. 33]. Colony cites two pieces of evidence to substantiate this belief. *Id.* First, EJS President Eduardo Souza admits that Troensa's work at the River's Edge was new construction. Second, the Association admits that all work performed by Troensa at the River's Edge project was work on new construction. *Id.*

The Association argues that summary judgment is premature. Def. Opp'n Br. ("Opposition Brief") [Doc. No. 29] at 7–8. First, the Association notes that discovery was ongoing at the time of Colony's motion. *Id.* at 7. Second, the Association states that Colony has failed to comply with its document request. *Id.* In its opposition brief, the Association explains,

> While Colony, on January 29, 2018, produced some documents to the Association in response to the Association's document requests, the Association requires additional discovery to establish coverage in this case – namely, from Troensa, after Colony locates Troensa and properly serves Troensa with the complaint and a summons. *Id.* at 7–8.

The Association also submits a Rule 56(d) declaration from David R. Dahan, Esquire. Declaration of David R. Dahan, Esq. ("Dahan Affidavit") [Doc. No. 29-3]. Defendants request:

> (a) Troensa's documentation and records pertaining to the Policy, including any evidence Troensa may have with respect to its disclosures to Colony regarding work it expected to perform, the course of dealing between Troensa and Colony, and a copy of the Policy as provided to Troensa; and
>
> (b) Depositions of a corporate designee of Troensa to establish the expectations of Troensa with respect to the Policy.

Opposition Brief at 7.

## II.     LEGAL STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson,* 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed. R. Civ. P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact." *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. Appx 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)).

Again, in deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there

is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  Credibility determinations are the province of the fact finder, not the district court.  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).


## III.    DISCUSSION

Colony seeks a declaration from this Court that the Colony Policy does not require it to defend or indemnify defendants in connection with the Burlington Action.  Before considering these arguments, the Court must be satisfied that it has jurisdiction pursuant to 1332 and the broad discretionary standards of the Declaratory Judgment Act ("DJA").  As set forth below, the Court is satisfied it has jurisdiction.

### A.  Jurisdiction

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201 and 2202, provides a remedy that may be used by the federal courts in appropriate circumstances.  This statute provides in relevant part that a court "[i]n a case of actual controversy within its jurisdiction . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  "The question in each case is whether the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, 'of sufficient immediacy and reality' to justify judicial resolution."  *Peachlum v. City of York*, 333 F.3d 429, 434 (3d Cir. 2003) (quoting *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is

such a controversy." *Md. Cas. Co.*, 312 U.S. at 273.

Even if this Court has subject matter jurisdiction, it retains discretion pursuant to the Declaratory Judgment Act to decline declaratory judgment jurisdiction. *See*, *e.g.*, *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995) (stating that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites"). Our circuit explained recently,

> The discretion courts exercise in actions seeking only declaratory relief is 'substantial' but nonetheless 'bounded and reviewable.' On the one hand, courts may abstain based on 'considerations of practicality and wise judicial administration.' On the other hand, the 'wholesale' dismissal of certain types of cases brought under the DJA is improper, as litigants should not be unjustifiably denied the right to obtain an authorized remedy in federal court.

*Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (internal citations omitted).

Here, Colony has invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332, which has two requirements for the establishment of jurisdiction. First, the parties must be completely diverse, meaning that "no plaintiff can be a citizen of the same state as any of the defendants." *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013) (quoting *Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Management., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003)). There is no dispute that the parties are of diverse citizenship: Colony is a citizen of Virginia, and Defendants are citizens of New Jersey. Second, the matter in controversy must exceed the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). We now consider the amount in controversy requirement in context to declaratory judgment actions.

"Although declaratory judgment actions do not directly involve the award of monetary damages, 'it is well established that the amount in controversy [in such actions] is measured by the value of the object of the litigation.'" *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 397–98 (3d Cir. 2016) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). In an insurance coverage declaration action, courts look to the value of the insurance policy and the damages alleged in the underlying case to determine whether the jurisdictional amount in controversy has been met. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995); *Manze v. State Farm Ins. Co.,* 817 F.2d 1062, 1068 (3d Cir. 1987). The allegations set forth in the complaint control the determination unless it appears "to a legal certainty the claim is really for less than the jurisdictional amount." *Jumara*, 55 F.3d at 877 (quoting *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961)).

Here, the policy at issue has a General Aggregate Limit listed as $1,000,000, far above the $75,000 diversity requirement.[2] Moreover, the Association attributes $6,500,000 in damages to Troensa in the underlying claim. We are therefore satisfied that the Court has subject matter jurisdiction over this action and now consider whether to exercise jurisdiction under the Declaratory Judgment Act.

### B. Discretion to Exercise Jurisdiction

The Court's discretion to exercise jurisdiction is somewhat complicated in an insurance context. First, the Court considers whether the state and federal actions are "parallel proceedings." If so, there is a presumption against exercising discretion. After this

---

[2] *See* Colony Policy at 5 (detailing various limits of insurance within the Policy up to $1,000,000).

threshold question, the Court weighs the eight *Reifer* factors, which courts in this circuit

universally apply when considering the exercise of jurisdiction.

### 1. Parallel Proceedings and the Presumption in Favor of Exercising Jurisdiction

The Supreme Court and various circuits have long noted the importance of pending

parallel state proceedings when deciding whether to exercise jurisdictional discretion under

the DJA.[3]  Our circuit noted in *Reifer* that a district court should first determine whether

there is a parallel state proceeding.  *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 143 (3d Cir.

2014) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491,494 (1942)).  Although "the

existence or non-existence of pending parallel state proceedings is but one factor for a

district court to consider," "the absence of pending parallel state proceedings militates

significantly in favor of exercising jurisdiction, although it alone does not require such an

exercise." *Id.* at 145.  Relatedly, when a parallel proceeding does exist, "district courts

exercising jurisdiction should be rigorous in ensuring themselves that the existence of

pending parallel state proceedings is outweighed by opposing factors." *Id.* at 145.

Our circuit, in declaratory actions brought by an insurer, considers whether the

underlying state claim focuses on the insured's liability.  For example, in *Terra Nova Ins.*

*Co. Ltd. v. 900 Bar, Inc.,* although the Third Circuit eventually affirmed the district court's

---

[3] *See, e.g.*, *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) (detailing the discretionary standard of a district court's decision to stay a declaratory judgment action during the pendency of a parallel state court proceeding); *Wilton*, 515 U.S. at 277 (affirming the discretion of district courts to stay declaratory judgment action during a parallel state court proceeding).  *See also Shrewin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 394 (5th Cir. 2003) (noting that "the presence or absence of a pending parallel proceeding is an important factor"); *Aetna Cas. & Sur. Co. v. Ind-Com Elec Co.*, 139 F.3d 419, 423 (4th Cir. 1998) ("[T]he existence of [a parallel state] proceeding should be a significant factor in the district court's determination.").

decision to stay the case, it emphasized the difference between a state tort action and federal declaratory judgment action on the policy's coverage. 887 F.2d 1213, 1219 & n.4 (3d Cir. 1989). Similarly, in *Md. Cas. Co.,* an individual brought an auto injury claim against a company in state court, and the company's insurer sought a declaratory judgment of nonliability under the policy in federal court. 101 F.2d at 514–15. There again, the Third Circuit held the issues involved in the state and federal lawsuits—the extent of the company's liability to the injured persons and the extent of coverage owed by the insurer to the company, respectively—were distinct. *Id.* at 515–16. Other circuits have affirmed this position as well.[4]

Our circuit has reaffirmed its guidelines on parallel proceedings in *Kelly.* To be considered parallel, there must be "substantial similarity in issues and parties" between the pending proceedings. *Kelly,* 868 F.3d at 284. The Court noted that "'[s]ubstantial similarity' only means that the parties involved are closely related and that the resolution of an issue in one will necessarily settle the matter in the other." *Id.* at 284 n.8 (citing cases). The Court stated that the "mere potential or possibility that two proceedings will resolve related claims between the same parties is not sufficient to make those proceedings parallel." *Id.* at 284. The Court noted that its definition of parallelism is "substantially

---

[4] *See, e.g.*, *Scottsdale Ins. v. Detco Indus. Inc.,* 426 F.3d 994, 997 (8th Cir. 2005) (holding that a state tort lawsuit and the insurer's federal coverage declaratory lawsuit were not parallel because although the issues may "depend on some of the same facts," the state proceeding involved "parties, arguments, and issues different from those in the federal [suit]"); *Nautilus Ins. Co. v. Winchester Homes, Inc*., 15 F.3d 371, 380 (4th Cir. 1994) ("We are satisfied that there is no significant overlap in the issues of fact that must be decided to resolve these two separate and independent legal controversies."); *Am. States Ins. v. D'Atri*, 375 F.2d 761, 763 (6th Cir. 1967) (rejecting the argument that an insurer's obligation to defend and indemnify its insured against a tort claim was "inextricably bound up with" the question of the insured's liability to the tort claimant).

consistent" when considering broader abstention arguments under the doctrine articulated in *Colo. River Water Conservation District v. United States,* 424 U.S. 800 (1976). *Kelly,* 868 F.3d at 284–85.

In the insurance context, *Kelly* recognizes that "cases are parallel when they involve the same parties and claims." *Ryan v. Johnson,* 115 F.3d 193, 196 (3d Cir. 1997); *see also State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000).

Germane to the case before this Court, the *Kelly* decision creates a *per se* presumption that an insurer's declaratory judgment action is distinct from underlying tort actions in state court where the insurer is a non-party. *Kelly*, 868 F.3d at 287. Since the *Kelly* opinion was authored in August 2017, district courts in our circuit have followed the rule. For example, in both *Foremost Ins. Co. v. Nosam, LLC* and *Homesite Ins. Co. v. Neary*, the Eastern District of Pennsylvania found no parallel state proceeding because the insurance company was not a party in state court. *Foremost Ins. Co. v. Nosam, LLC.*, No. 5:17-cv-02843, 2018 WL 417035, at *2 (E.D. Pa. Jan. 12, 2018); *Homesite Ins. Co. v. Neary*, No. 17-2297, 2017 WL 5172294, at *3 (E.D. Pa. Nov. 8, 2017). The Court in *Foremost* acknowledged that both the state and federal action arose from the same set of facts but noted the underlying state negligence claim "will not resolve the issue in this case of whether Foremost [Insurance Co.] has a duty to defend and indemnify." *Foremost*, 2018 WL 417035, at *2; *see also Frederick Mut. Ins. Co. v. Target Corp.*, 301 F. 3d 515, 519 (E.D. Pa. Mar. 19, 2018) (finding parallel proceedings where state tort action and federal declaratory judgment action "involve[ed] the same parties"). In another example, the Middle District of Pennsylvania ruled that a case about whether the defendant's insurance policy with the plaintiff insurer covers his potential liability is distinct from one deciding whether the insured is in fact liable to that party. *Trustgard Ins. Co. v. Fagan*, No. 3:18-cv-00714, 2018 WL

3631935, at *3 (M.D. Pa. July 31, 2018).  While our circuit has not interpreted another declaratory judgment action with a contemporaneous state lawsuit since *Kelly*, it acknowledged the merits of this new rule in another case recently decided on alternative grounds.[5]

We now consider whether the *Kelly* rule applies.  Based on the record, Colony has appeared in the Burlington Action. There, the Association attempted to serve Defendant Troensa via Colony, and Colony moved to quash service.  The state court then denied Colony's motion as well as its motion for reconsideration.  Def. Supp. Fact ¶¶ 21–24.  Colony sought leave to appeal and was also denied.  Dahan Affidavit ¶ 21.  Despite these interactions in the underlying Burlington Action, Colony is not a named party in the fourth amended complaint.  We also note that the issues between the Burlington Action and the one before this Court appear distinct.  As discussed above, our circuit has held declaratory judgment claims from insurance companies to be distinct claims from underlying claims involving the insured's tort law liabilities.  We therefore find no parallel proceeding between the state and federal action.

### 2. The Reifer Factors and Determining the Exercise of Jurisdiction

With a finding of *no* parallel proceeding, this Court presumes it has jurisdiction and now considers the factors laid out in *Reifer*.[6]  These factors are:

---

[5] In *Esurance Ins. v. Bowser*, Judge Krause noted, "Esurance argues that the District Court erred in deeming the underlying state tort action a parallel proceeding because it involves different claims and different parties … Esurance's arguments have force . . . ." 710 F.Appx 110, 111 (3d. Cir. 2018).

[6] The Third Circuit notes that the "list of factors is not exhaustive and that other considerations might be relevant in the appropriate case."  *Kelly*, 868 F.3d at 282 n.6 ("For instance, we noted in *Reifer* that our decision in *State Auto* [] might supply additional guidance in insurance cases").

(1)     the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2)     the convenience of the parties;

(3)     the public interest in settlement of the uncertainty of obligation;

(4)     the availability and relative convenience of other remedies;

(5)     a general policy of restraint when the same issues are pending in a state court;

(6)     avoidance of duplicative litigation;

(7)     prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata;* and

(8)     (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer,* 751 F.3d at 146 (discussing *Brillhart,* 316 U.S. 491, and *State Auto,* 234 F.3d at 134).

The first factor considers whether a declaration in the federal court proceeding will resolve the uncertainty that gave rise to the current controversy.  There is no question that a declaration from this Court would resolve uncertainty between the parties regarding the Colony Policy's coverage.  This factor therefore supports jurisdiction.

The second factor considers the convenience of the parties.  As explained, Colony is not a party in the Burlington Action.  In addition, all defendants in the instant action are citizens of New Jersey.  Given that Plaintiff has filed the action in New Jersey, none of the parties will be inconvenienced by having this matter adjudicated in the federal forum.  This factor also tips in favor of our exercise of jurisdiction.

The third factor considers the public interest in the settlement of the uncertainty of obligation.  The record does not indicate any public interest considerations.  In addition, our

interpretation of the Colony Policy does not appear to turn on any unsettled question of state law or important policy issue implicated by the coverage claims. Absent these concerns, there is little reason for a federal court to be reluctant about deciding this case. *See Reifer*, 751 F.3d at 147 ("[F]ederal and state courts are equally capable of applying settled state law to a difficult set of facts." (quoting *Heritage Farms Inc. v. Solebury Twp.*, 671 F.2d 743, 747 (3d Cir. 1982)).

The fourth factor is the availability and relative convenience of other remedies. Again, neither party argues that other remedies would be adequate or more convenient. Both this Court and the state court are able to grant effective relief in these circumstances.

The fifth factor considers the general policy of restraint when the same issues are pending in state court. As explained above, Colony is not a party in the Burlington Action. Nor is the Colony Policy at issue in that court. Therefore, the policy of restraint does not apply.

The sixth factor concerns duplicative litigation. As explained in the previous factor, and more fully above, there is no reason to be concerned about duplicative litigation as the issues in the two proceedings are distinct. The Court is further persuaded by Colony's argument that our ruling may in fact weigh against future duplicative actions.

The seventh factor is the prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*. Given that Colony is not a party in the state proceeding, this concern does not apply. In addition, Defendants do not charge Colony with any procedural fencing tactics.

Finally, the eighth factor focuses on an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal

court as falling within the scope of a policy exclusion. As explained, Colony is not a party in the state action. Relatedly, defendant Troensa has not called on Colony to defend it there. As such, no conflict of interest presently exists.

In sum, the Burlington Action is not a parallel proceeding. Therefore, a presumption exists that favors this Court's jurisdiction. In addition, the factors the Third Circuit provided in *Reifer* affirm the presumption. We therefore exercise jurisdiction over Colony's summary judgment motion for declaratory relief.

### C. Colony's Motion for Summary Judgment

Colony argues that the Court decide, as a matter of law, three things: (1) dismissal of all non-pertinent defenses in the Association's answer; (2) denial of coverage in the underlying claim to Torensa; and (3) denial of coverage in the underlying claim to EJS. We consider these arguments below.

### 1. Whether Certain Defenses in the Association's Answer Should be Dismissed

Colony first argues that the Court must dismiss certain defenses that the Association asserted in its answer. Colony MSJ Brief at 4. While first noting some concern that its summary judgment motion included a request to dismiss affirmative defenses,[7] we dismiss this request as

---

[7] Although some courts have applied a summary judgment standard to affirmative defenses, it is by no means controlling. *Compare United States v. Manzo*, 182 F.2d 385, 395–96 (D.N.J. 2000) (analyzing sufficiency of defense under partial summary judgment framework) *with Krauss v. Keibler-Thompson Corp.*, 72 F.R.D. 615, 616 (D. Del. 1976) ("The weight of authority and a close textual examination of the Rules convinces this Court that a motion to strike an affirmative defense can be considered only as a Rule 12(f) motion and is not a proper motion under Rule 56(d)").

moot based on stipulation of the parties.  *See* Dahan Letter, Mar. 2, 2018 [Doc. No. 34].


### 2.   *Whether Colony must defend or indemnify Troensa*

Colony argues that the Policy is unambiguous and precludes defendant Troensa from coverage.  Meanwhile, the Association argues the Policy is ambiguous and additional discovery is required.  We begin by reciting briefly some familiar principles that bear upon the question before us.

This Court applies New Jersey law when considering insurance coverage by a policy issued in New Jersey.  *See Interstate Aerials, LLC v. Great American Ins. Co. of New York*, 595 F.2d 373 (D.N.J. Nov. 26, 2008).  Generally, "[w]hen interpreting an insurance policy, courts should give the policy's words 'their plain, ordinary meaning.'"  *President v. Jenkins*, 853 A.2d 247, 254 (N.J. 2004) (citation omitted).  Under New Jersey law, when interpreting a commercial insurance policy, the court must "first examine the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'"  *Pizzullo v. N.J. Mfrs. Ins. Co.*, 952 A.2d 1077, 1088–89 (N.J. 2008) (quoting *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262 (N.J. 2001)).

New Jersey courts usually only depart from the plain meaning of the contract when faced with ambiguity.  An ambiguity exists when "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage."  *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979).  In *Zacarias*, the New Jersey Supreme Court held that in enforcing an insurance policy, a court should only "depart from the literal text" and apply the reasonable expectations doctrine "if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine

print, or requires strenuous study to comprehend." *Zacarias*, 755 A.2d at 1268 (internal citations omitted).

### a. Whether the Policy is ambiguous

The Association takes issue with the Policy's declarations pages. Specifically, the Association points to the first page, where the heading reads, "Common Policy Declarations." Colony Policy at 1. The Association says that this page "does not indicate any restriction on coverage for work performed on new construction." Opposition Brief at 4. The Association then points to another declarations page and makes the same argument.[8] Put simply, because these select pages do not indicate a limitation of coverage, the entire Policy cannot have such limitation.

These arguments are unpersuasive. The New Jersey Supreme Court explained in *Zacarias v. Allstate* that descriptions and exclusions need not be placed on the declarations page. *Zacarias*, 775 A.2d at 1270 ("an insurance contract is not *per se* ambiguous because its declarations sheet, definition section, and exclusion provisions are separately presented"). In addition, the declarations page here states that coverage is "subject to all the terms of this policy" and indicates a schedule of forms and endorsements. The court explained in *Continental Casualty* that a reference to an endorsement on a declarations page "does not alter the validity of the Policy and Endorsement." *Cont'l Cas. Co. v. Gamble*, No. 05-5189, 2007 WL 1657107, at *5 (D.N.J. June 5, 2007).

---

[8] The Court notes that Defendant's Reply Brief refers to its Supplemental Statement of Material Fact, but the corresponding citations within only include the docket entry number and no page number.

The business description is also clear and unambiguous. The Policy explains that the business description page "modifies insurance provided under . . . Commercial General Liability Coverage." Colony Policy at 10. Specifically, it amends coverage for bodily injury and property damage liability to such damage that is "caused by or results from the business described in the Schedule." *Id.* The Schedule, marked in bold and centered on the page, defines business as "COMMERCIAL OR RESIDENTIAL REMODELING, NOT TO INCLUDE ROOFING." *Id.* Thus, the Policy covers commercial and residential remodeling.

The exclusion of residential new construction is also clear and unambiguous. Colony Policy at 20. The Policy states:

> This insurance does not apply to 'bodily injury' or 'property damage' included in the 'products completed operations hazard' and arising out of or resulting from 'your work' performed on new single or multiple family housing, apartment, townhouse, or condominium projects.

*Id.* This provision as well as the limitation of coverage shows that the Colony Policy covered commercial and residential remodeling, not new residential construction. In addition, we note that the Policy application distinguishes coverage for remodeling and new construction work. *See* Colony Application at 9.[9]

Finally, relevant headers within the Policy are clear and unambiguous. For example, after the declarations pages, the Policy lists endorsements and says, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY." These headers signal important changes for the policy holder and that the policy is not to be limited to the first page as Defendant suggests. *See Interstate Aerials, LLC v. Great Am. Ins. Co. of New York*, 352 F.Appx.

---

[9] For example, in its application to Colony, Troensa indicated it did "no" new construction but indicated it did fifty percent "remodeling/additions" and fifty percent "repaid/service work." *Id.*

637, 640 (3d Cir. 2009) (discussing how the headings and endorsements were large and capitalized like here). Satisfied that the Policy is not ambiguous, we now consider whether Colony must defend Troensa in the Burlington Action.

### b. *Whether the Policy covers Troensa in the Burlington Action*

Whether an insured has a duty to defend is determined by comparing the allegations in the underlying complaint with the language of the policy. *See Voorhees v. Preferred Mutual Ins. Co.*, 607 A.2d 1255 (N.J. 1992). New Jersey determines this by looking not only to the allegations of the complaint but also to relevant facts extrinsic to the complaint. *SL Industries v. American Motorists*, 607 A.2d 1266 (N.J. 1992). The New Jersey Supreme Court has held, "insureds expect their coverage and defense benefits to be determined by the nature of the claim against them, not by the fortuity of how the plaintiff, a third party, chooses to phrase the complaint against the insured." *Id.* at 1272.

Here, the fourth amended complaint in the Burlington Action alleges fourteen counts against more than one-hundred defendants. These causes of action include breaches of express and implied warranty, negligence, negligent supervision, violations of the Consumer Fraud Act, common law fraud and misrepresentation, violations of the Planned Real Estate Development Full Disclosure Act, negligent hiring, and breach of contract. Troensa is classified as a defendant in eight of the fourteen counts.[10] The counts allege defendants built, constructed, developed, or maintained the condominiums or common elements at the River's Edge. Troensa appears in the

---

[10] The headings of counts six through ten and count thirteen in the Burlington Action do not include "Defendants," which the Association defines as including Troensa. Instead, these counts focus on developers, builders, and other unidentified John Doe individuals.

complaint in a few specific places.[11]

We need not wade into each Count in the underlying Burlington Complaint. *SL Industries, Inc.*, 607 A.2d at 1272 ("facts outside the complaint may trigger the duty to defend"). In *SL Industries*, the Supreme Court of New Jersey explained, "Many states agree that the duty to defend is triggered not only by the allegations in the complaint, but by the later discovery of relevant facts." *Id.* (citing cases). The facts here present no material dispute that Troensa's work at the River's Edge fall outside of the Policy. First, the Association admitted that *all* of the work performed by Troena at the River's Edge project was work on new residential construction. Def. SMF ¶ 11 (emphasis added). Second, the Association admitted that *none* of the work performed by Troensa at the River's Edge project was remodeling work. *Id.* ¶ 11 (emphasis added). Third, EJS President Eduardo Souza corroborated that all of the work at River's Edge was new construction, and Troensa performed only remodeling work. Souza Affidavit ¶¶ 6, 8. In addition, Defendant Troensa has provided no information to combat these admissions. We therefore find no material dispute as to whether Troensa is covered by the Policy in the

---

[11] The Court notes the following relevant references:

> "The Defendants [including Troensa] were contractually engaged by the Developer and/or Builder and/or other Co-Defendants in connection with the design, material selection and/or construction of the Community." Burlington Complaint ¶46.

> "Upon information and belief, Troensa was at all times relevant hereto in the business of performing services associated with, but not necessarily limited to, the building envelope, certain exterior finishes, windows and framing and related components/parts at the [River's Edge] Community." *Id.* ¶ 65.

> "Upon information and belief, there exists an agreement between EJS and Jandaia, Troensa, RBS and Souza to have performed their work in a reasonable and workmanlike manner at the property, which is the subject of this lawsuit." *Id.* ¶ 68.

> "Upon information and belief, there exists an agreement between EJS and Jandaia, Troensa, BRC and Souza in which Jandaia, Troensa, BRC and/or Souza expressly and/or impliedly warranted their work at the property, which is subject of this lawsuit." *Id.* ¶ 69.

Burlington Action and grant Colony's motion.

### c. *Whether additional discovery is required*

The Association argues that summary judgment is premature because discovery was ongoing during the filing of its opposition motion and certain discovery requests remain outstanding. The Association furnishes a Rule 56(d) declaration in response to Colony's motion for summary judgment, explaining that, at the time the Association was preparing its opposition, discovery had not completed. *See* Dahan Affidavit [Doc. No. 29-3]. In its opposition motion, the Association wrote, "While Colony, on January 29, 2018, produced some documents to the Association in response to the Association's document requests, the Association requires additional discovery to establish coverage in this case – namely, from Troensa . . ." Opposition Brief at 6–7. The Association then listed:

> (a) Troensa's documentation and records pertaining to the Policy, including any evidence Troensa may have with respect to its disclosures to Colony regarding the work it expected to perform, the course of dealing between Troensa and Colony, and a copy of the Policy as provided to Troensa; and

> (b) Depositions of a corporate designee of Troensa to establish the expectations of Troensa with respect to the Policy.

*Id.*; *see also* Dahan Affidavit at ¶¶ 11–12.

We deny this request because it fails to comply with Rule 56. In relevant part, a Rule 56(d) declaration must specify: (1) what particular information is sought; (2) how, if uncovered, it would preclude summary judgment; and (3) why it has not previously been obtained. *Pa., Dept. of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 139–40 (3d Cir. 1988)). The Association does not

name any documents or records with specificity.  In addition, the Association's request to depose *some* Troensa executive does not satisfy 56(d)(2)'s requirement of showing *how* this deposition would preclude Colony's summary judgment motion.  And finally, there is simply no reason to conclude that additional time would make the Association any more likely to locate defendant Troensa – let alone raising a genuine issue as to whether it is covered under the Policy.

### 3.  *Whether Colony must defend or indemnify EJS*

We next turn to whether Colony must defend or indemnify EJS.  Subcontractors are often listed as additional insureds on existing insurance policies.  Often, these agreements are preconditions to employment on commercial construction projects.  A subcontractor will therefore obtain a certificate of liability insurance from an insured party listing him as an "additional insured."  Our circuit distinguishes those additional insureds who are listed by the insurer and those additional insureds listed by another party.  See *Ramara, Inc. v. Westfield Ins. Co*., 814 F.3d 660 (3d Cir. 2016) (extending coverage to an additional insured who obtained the certificate of insurance from the insurer directly).

Here, EJS does not allege it obtained a certificate from the insurer Colony.  Instead, EJS has a one-page certificate from a third-party insurance broker, AVS.  Certificate of Liability Insurance ("certificate") [Doc. No. 6-4].  This certificate states, "This certificate is issued as a matter of information only and confers no rights upon the certificate holder.  This certificate does not amend, extend or alter the coverage afforded by the policies below."  *Id.* The certificate, under "coverages," also states that the policies listed "have been issued to the insured named above [Troensa] for the policy period indicated, notwithstanding any

requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain . . ." *Id.*

New Jersey courts give these kinds of certificates little consideration when claiming coverage under another's policy. For example, in *Scottsdale Ins.,* this District explained that certificates of insurance issued by non-insurers are not part of the insurance contract. *Scottsdale Insurance Co. v. Somerville Fidelco Assocs., LP*, No. 07-2763, 2010 WL 624891, at *3 (D.N.J. Feb. 22, 2010). There, the Court emphasized that the purpose of non-insurer certificates are informational—to let parties know the insured has coverage. *Id.* The New Jersey Superior Court Appellate Division considered a strikingly similar certificate to the one at issue. *Selective Ins. Co. v. Hospicomm, Inc.*, *et al*, No. L-1053-04, 2014 WL 4722776 (N.J.Super.Ct.App.Div. Sept. 24, 2014). There, the court explained,

> The certificate of insurance issued by [the insured]'s broker to FJL does not provide it any additional rights and certainly does not alter the conclusion that FJL is not an additional insured under the Valley Forge policy. That certificate contains in bold capital letters under the title of the document: THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.
>
> Thus, although the certificate lists the Valley Forge CGL policy and states that "FJL Enterprises, Inc. & Merion Gardens Assisted Living Co. are Additional Insureds under the General Liability coverage for liability arising out of the Named Insured's operations," the certificate expressly confers no rights on its holder, FJL.

*Id.* at *7. *See also Quincy Mut. Fire Ins. Co. v. Imperium Ins*., 636 F.Appx. 602, 606 (3d. Cir. 2016) ("It is unreasonable to rely on a certificate of insurance that explicitly disclaims conferring any rights.")

These cases show no dispute as to whether EJS's certificate extends coverage under the policy.  As such, we grant this part of Colony's motion for summary judgment.

### A.  The Association's Cross Motion to Vacate Troensa's Entry of Default

Rule 55(a) states, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Relatedly, Rule 55(c) governs setting aside a default or a default judgment.  Specifically, "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  F.R.C.P. 55(c).

The Association relies on *Rauscher* and argues it has standing to motion the court to vacate the entry of default against Troensa.  *See Fed. Kemper Ins. Co. v. Rauscher,* 807 F.2d 345, 354–55 (3d Cir. 1986).  *Rauscher* holds that injured plaintiffs in a state action have standing to defend against an insurer's declaratory action in federal court, even after a default judgment is entered against the insured.  *Id.  See also Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 314 (3d Cir. 2011) (holding that an injured party who had been named as a defendant in an insurance coverage declaratory judgment action had standing to appeal the district court's grant of summary judgment in favor of the insurer).  While these cases would suggest the Association can challenge the policy after a default judgment, they do not assist the Association's argument with regard to an entry of default.  Entry of default is simply not a final judgment, and we therefore deny the Association's cross-motion.

**IV. CONCLUSION**

Based on the reasoning above, Plaintiffs motion for summary judgment is **GRANTED** with respect to count two of the first amended complaint and is **GRANTED** with respect to count six. Defendant's cross-motion to vacate entry of default is **DENIED.**

Dated:   9/28/2018                                                    s/ Robert B. Kugler

                                                                      ROBERT B. KUGLER

                                                                      United States District Judge